UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
BRIAN WHITE,

Plaintiff,

18 CV 730

v.

WESTCHESTER COUNTY; NEW YORK CORR-ECT CARE SOLUTIONS MEDICAL SERVICES, P.C.; CORRECT CARE SOLUTIONS, LLC; DOCTOR ULLOA; DOCTOR GENDELL; C.O. MILLER WCJ; SERGEANT MATTHEW KITT; SERGEANT RANDAZZO; CAPTAIN CARDEN; LAW LIBRARIAN HEWITT.

Defendants.

**42 U.S.C. § 1983**

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

17-Cv.________( ) ( )

-----------------------------------X

**Plaintiff Pro Se states as follows:**

**PRELIMINARY STATEMENT**

1. This is a civil rights action being brought Pursuant to 42 U.S.C. § 1983 arising out of the deliberate indifference of multiple Westchester County officials. Defendants hereby interferred and/or refused Plaintiff his prescribed medication, which subsequently caused Plaintiff to suffer from a constellation of physical ailments, and placed him at risk of a serious injury, i.e. death. Plaintiff asserts Monell claims against Westchester County based on their failure to train, and supervise contractors e.g. Correct Care Solutions ("CCS"). Moreover, Plaintiff further asserts New York state law claims under various theories.

**PARTIES TO THE ACTION**

2. Plaintiff BRIAN WHITE, was at all times relevant confined to the Westchester County Jail ("WCJ"), as a pretrial detainee, and a citizen of the United States of America.

3. Defendant Westchester County, was at all times relevant a municipal, corporate subdivison of the state of New York, who was responsible for the policies, customs, and usages in the WCJ.

4. Defendant New York Correct Care Solutions Medical Services, P.C. ("NYCCS"), was at all times relevant a private company acting through contract with defendant Westchester County to provide medical services to WCJ inmates; thus performing a governmental function.

5. Defendant Correct Care Solutions, LLC ("CCS"), was at all times relevant a private company acting through contract with defendant Westchester County to provide medical services to WCJ inmates; thus performing a governmental function.

6. On belief New York CCS, is an alter ego of Correct Care Solutions, LLC.

7. Defendant Doctor Ulloa, was at all times herein an employee of NYCCS, CCS assigned to WCJ as a medical doctor responsible for

treating inmates, approving inmate prescriptions, approving/ re-instating inmate medications, that were prescribed prior to their confinement, and supervision of all CCS subordinates.

8. Defendant Doctor Gendell, was at all times relevant an employee of NYCC, CCS assigned to the WCJ as a medical Doctor, responsible for treating inmates/approving inmate prescriptions, approving/re-instating inmate medications, that were prescribed prior to their confinement, and supervising subordinates of CCS.

9. Defendant C.O. MILLER OF WCJ, was at all times relevant a correctional Officer assigned to the WCJ. As part of defendant's duties, he was responsible for accepting, and investigating inmate grievances.

10. Defendant Sergeant Matthew Kitt, was at all times relevant a correctional sergeant assigned to the WCJ. As part of defendant's duties, he was responsible for accepting, and investigating inmate grievances.

11. Defendant Sergeant Randazzo, was at all times relevant a correctional sergeant assigned to the WCJ. As part of defendant's duties, he was responsible for accepting, and investigating inmate grievances.

12. Defendant Captain Carden, was at all times relevant a correctional Captain assigned to the WCJ. As part of defendant's duties, she was responsible for accepting, and investigating inmate grievances.

13. Defendant Law Librarian Hewitt, was at all times relevant a Law Librarian assigned to the WCJ, who was responsible for ensuring that inmates received legal materials and/or assistance in accordance with state and federal laws.

14. All defendant(s) were acting under color of law.

15. All defendants are being sued in their individual and official capacities.

## JURISDICTION & VENUE

16. This court has federal jurisdiction over Plaintiffs claims pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1343, and his claims arising out of defendants violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution. Moreover, this court has Supplemental jurisdiction over Plaintiffs state law claims Pursuant to 28 U.S.C. § 1367.

17. The Southern District of New York is the proper venue as the act(s) or omissions giving rise to this claim occurred in this jurisdiction.

18. A proper notice of claim was filed upon Westchester County, 30 days have elapsed since the filing and the underlying claims have yet to be settled or otherwise disposed of.

**BACKGROUND OF WCJ**

WCJ is a county correctional center, located in the town, that is used to house federal & state pretrial detainee's. WCJ also houses county and state sentenced inmates. WCJ has the responsibility to provide inmates of WCJ with medical, mental health, and dental treatment. WCJ offers their inmates these services through contract with Correct Care Solutions, LLC, New York Correct Care Solutions Medical Services, P.C. Since, the aforementioned medical providers arrival at WCJ, they have been the subject of over 50 civil rights actions, which were filed in this very courthouse. The claims against defendants stem from: Medical Malpractice, wrongful death, deliberate indifference, Negligence, gross negligence, respondeat superior, Monell claims inter alia. A vast majority of those claims were settled.

Moreover, CCS defendant's have been the subject of over (1) hundred federal & state lawsuits accross the United States of America arising from similar claims Id.

Inmates arriving at WCJ, are screened and evaluated by CCS medical authorities. Whereas, the inmate-patient under goes a series of questions, and proclaims any illnesses and/or chronic

conditions. In addition, the inmate-patient has the opportunity to provide the aforesaid medical authorities with a list of prescribed medications that he/she was taking prior to their instant confinement, and provide the address of the Medical Doctors ("MD") who prescribed said medication(s). Thereafter, the inmate-patient will sign a Medical Release form, pursuant to the Health Information Portability Act ("HIPA"), authorizing CCS to obtain medical information from the inmate-patient's MD; in effort to verify the inmate-patients prescriptions. However, Westchester County ("County") nor CCS has a safeguard in place to ensure that inmates who require certain medications, as a matter of life or death are timely presecribed such medications. Nevertheless, inmate-patients are needlessly placed at risk of death or serious physical injury, based on this omission.

A prudent medical provider would and/or should ensure that certain medications are timely provided in the event that the patients MD does not respond to CCS's medical release timely (for whatever reason), thus CCS's failure to implement a safe-guard evidences deliberate indifference to WCJ's inmate population.

Furthermore, even thereafter an inmate-patient's MD has provided CCS with accurate medical records, and has further verified the patients chronic condition and prescriptions, CCS nevertheless has unreasonable delay in ordering the essential medications. This pattern, and practice unnecessarily, places

the inmate-patient at risk of death and/or serious physical injury. Moreover, this practice has caused an unusual number of inmates at WCJ to suffer, unnecessairly from excruciating pain, and has exacerbated pre-existing conditionds. In addition, there has been several near death experiences based on this omission.

Shockingly, even after an inmate-patient's medications has been verified and approved by CCS, the inmate-patient still experiences an unreasonable delay in ordering the medications. Secondly, when the medication is finally ordered, CCS does not have a system in place to ensure that all essential medications are ordered and stocked prior to the termination (through usage) of the medications previous order. This unnecessarily places inmates at risk of death or serious physical injury, because the inmate can go several days without his required medications. This occurs because CCS nor Westchester County has a system in place to track inmate medications and/or they do not utilize their system accordingly.

On belief, CCS fails/refuses to order medications prior to running through their stock, so that they can save financially; in the event that the inmate-patient is transferred or released from custody, and the unused medication has to be disposed of, therefore, wasting CCS profits or funds.

As a result of this practice, inmate-patient's with chronic conditions are constantly jepordized, and placed at risk of life

threatening injuries from a lack of his essential medications.

Shamefully, CCS does not administer medications in accordance with the times demanded by the pharmacutical companies who produced them and/or at the direction of the prescribing Doctor. CCS serves inmates their medications at fluctuating times[1]; sometimes 2-3 hours after/past the ordered issue times.

CCS, is a private company providing the aforementioned health care at WCJ. CCS is a company based from Tennessee, and their alter ego NYCCSMSPC is based from Albany, New York. However, they are both collectively carrying out a governmental function at WCJ on behalf of defendant Westchester County. Accordingly, since, CCS is carrying out a governmental function they can be held liable under 42 U.S.C. § 1983, despite their private company status.

It should be noted, that defendant's M.D. Ulloa, and M.D. Gendell have both been the subject of various federal lawsuits that include wrongful death claims at WCJ <u>inter alia</u>; filed in this very courthouse.

1. Inmates at WCJ are collectively served their medications three times a day; whereas, nurses (LPN's) respond to inmate housing units with medication carts, and serve inmate medications through a hole in the wall, while the inmates are compiled into a vestibule.

Defendant Raul Ulloa, is the Medical Director at WCJ. Defendant Gendell is the Director of chronic care at WCJ, working under the direct supervision of defendant Ulloa.

**FACTS SPECIFIC TO PLAINTIFF BRIAN WHITE**

19. In or around October 26, 2017 Plaintiff arrived at WCJ. As part of the intake process Plaintiff was examined by nurse practioner jane doe ("NP") of CCS and/or NYCCSMSPC. Plaintiff immediately informed said nurse that he suffered from a Pituitary Gland dysfunction (a chronic condition), and he further informed that he was being treated with 0.6 Ml. of Testosterone Cyponate (200 Mg/Ml 2x week-injection), specifically, on Monday & Thursday. In addition, Plaintiff was prescribed "Annasatrole" (anti-Estrogen) 3x a week.

20. Plaintiff's Medical provider M.D. Jeff Shapiro, tested Plaintiff's Testosterone (prior to his confinement), and he noted Plaintiff's Testosterone to be 1040. In addition, the aforesaid M.D. tested Plaintiff's estrogen simultaenously, and found it to be at 58. If Plaintiff's levels become imbalanced he faces a risk of death and other debilitating ailments.

21. It should be noted, that Plaintiff has had a history of a pituitary gland dsyfunction prior to his 2011 diagnoses. Plaintiff's chronic condition causes him to suffer from a myraid of physical ailments when imbalanced; i.e. light headedness, dizz iness, headaches, numness of the extremities inter alia.

22. Plaintiff's treatment plan consisted of 3 tablets of anti-estrogen, and two intramuscular injections of testosterone a week.

23. Plaintiff was assured by the examining nurse, that his medications would be validated by his community physician by October 30, 2017 and subsequently administered.

24. During Plaintiff's intake process he signed a medical release form Pursuant to the Health Information Portability Act ("HIPA"), authorizing CCS/NYSCCSMSPC to obtain Plaintiff's medical records from his community physician M.D. Jeff Shapiro. It should be noted that CVS pharmacy verified Plaintiff medications during the intake process.

25. Plaintiff was subsequently transferred to the reception housing unit of 3NW.

26. In or around November 1, 2017 Plaintiff avers that he had already missed two doses of his medications; Specifically, two injections of testosterone, and two Pills of Anti-Estrogen.

27. As a result Plaintiff began to suffer from an imbalance of his horomones and started to experience: chronic fatigue, muscle & joint pain, rapid weight change, numbness, dizziness <u>inter</u> <u>alia</u>.

28. Plaintiff filed numerous sick calls, and personally approached a nurse administering meds. on Nov. 1, 2017 and req-

uested to be provided with the aforementioned medications cited supra. From October 26, 2017 through November 23, 2017 Plaintiff filed approximately 18 sick call slips requesting his medications, and pain relief for the ailments that arose as a result of being denied his medications without cause.

29. In or around November 6, 2017 a nurse from CCS took Plaintiff for blood work to screen his testosterone, and Estrogen levels. Moreover, Plaintiff was informed that his medications were validated by his community physician Jeff Shapiro, and CVS Pharmacy, (CVS Verified Plaintiff's medication during his intake on October 26, 2017) despite Plaintiff's medications being validated they were nevertheless being withheld by CCS/NYCCSMSPC, evidencing a reckless regard for Plaintiff's serious medical needs.

30. Plaintiff asserts that he filed numerous request through sick call to CCS/NYCCSMSPC inquiring about the labratory results of his blood test. After several request Plaintiff was informed that his levels were dangerously low at: Testosterone 391 (a drop from 1040 to 391 in just 1.5 weeks).

31. In or around November 13, 2017 a nurse of CCS/NYCCSMSPC performed another blood test upon Plaintiff, and discovered thereafter, that Plaintiff's testosterone dropped again to an alarming digit of Free testosterone 25, testosterone (Blood) 46, and his estrogen was at an unbalanced digit of under 25.

32. Plaintiff asserts that he wrote letters to both M.D. Ulloa, M.D. Gendell informing that CCS's failure to provide him with his medications has caused him to suffer from the aforementioned ailments. However, neither M.D. responded to Plaintiff's correspondence.

33. On belief, CCS, and NYCCSMSPC expects defendant's M.D. Ulloa, and M.D. Gendell to keep medical cost at WCJ to a minimum by way of refusing inmates basic treatments, that medical facilities in the community generally offer and/or provide patients without a regard to cost i.e. MRI'S, essential medications, and make timely referrals to specialist. On further belief, CCS/NYCCS MSPC does not have an endocrinologist on hand, and they fail to consult with one prior to interferring with Plaintiff's medications.

34. On further belief, if CCS/NYCCSMSPC brass notices an increase in spending due to medication purchases, patient referrals and/or specialist request the medical, and nursing director may face termination.

35. Plaintiff states that he received his first dose of testosterone (0.6 Ml. injection) in or around Nov. 28, 2017; 34 days after arriving at WCJ, despite his medications being validated serveral weeks prior to.

36. Shockingly, defendant's of CCS are all trained, and passed a national licensing exam. Also included in their years of formal training is the proper technique for administering intramuscular injections along with being assessed

for competency in various skills such as administering injections. Accordingly, defendant's were consciously aware of the collateral consequences that Plaintiff faced as a result of not being provided with his medications i.e. death, and the ailments cited supra.

37. Plaintiff asserts that in or around November 27, 2017 his blood levels for testosterone were tested and found to be: Testosterone-Free 25, and blood Testosterone 46.

38. On information and belief, the normal range for a male 34-years old is anywhere from 500-1000 Testosterone. Plaintiff's M.D. Jeff Shapiro, wanted Plaintiff's testosterone level to be at a balanced 800 from his (prior to Plaintiff's confinement, labratory result 1040).

39. In or around December 27, 2017 Plaintiff was taken to Westchester County Medical Center, to be evaluated by an endorcrinologist with respect to his horomone imbalance. Whereas, the evaluating physician/specialist opted to continue Plaintiff's medication in spite of defendant Ulloa's urgency to titrate Plaintiff off his medications.

40. On information and belief, defendant Ulloa et al., wanted to titrate Plaintiff of his medications in effort to minimize spending for CCS/NYCCSMSPC by way of cutting back of purchases.

41. Plaintiff asserts that defendant's Ulloa and/or Gendell have no training with regard to Plaintiff's Pituitary Gland conition.

Plaintiff further asserts that the endocrinologist at Westchester Medical Center also demanded that CCS refer Plantiff immediately for an MRI as he may potentially be suffering from a tumor on his Pituitary Gland, as a result of not being provided with his medications at WCJ for approximately 34 days. As of the date of this writing Plaintiff has yet to receive an MRI for his potential tumor.

42. Plaintiff states that in or around December 20, 2017 he filed a Notice of Claim Pursuant to general Municipal Law § 50-E, based on CCS's conduct at WCJ. While getting notary services at WCJ 4 Floor Core defendant Law Librarian Hewitt deliberately, and intentionally read the contents of Plaintiff's Notice of Claim out-loud, before Correctional officer Miller, and Multiple nurse of CCS/NYCCSMSPC. Defendant Hewitt misread, that Plaintiff was getting/missing H.I.V. shots instead of testosterone (intentionally).

43. Consequently, Correctional officers of WCJ began to harass Plaintiff whenever he came out of his housing unit to receive his testosterone injection by way of stating "are you here to get your H.I.V. injection?" specifically, officer Miller, and defendant Hewitt would state such to Plaintiff, before other inmates and staff to the point that everyone thought Plaintiff was H.I.V. positive.

44. Plaintiff confronted defendant Hewitt about her actions in or around December 26, 2017 <u>inter alia</u>, and requested that she refrain from reading/misstating the contents of his legal work out-loud in the future, because her actions were subjecting him to retaliation.

47. Plaintiff asserts that this happened during most injections, and it has caused his arms to become bruised.

48. Plaintiff avers that he attempted to file a grievance with respect to being denied his medications for an unreasonable time frame, and the ailments he was suffering from with Sergeants Randazzo, Antoine, Castleberry, Kitt, and Linder while on 3-East housing unit from November 14, 2017 through November 16, 2017, each Sergeant stated to Plaintiff to file his grievance with CCS, by mailing such through the facility mail (Randazzo & Kitt), and/or they would come back to pick up the grievance, but never did (Castleberry, Linder, Antoine).

49. On information and belief, the aforementioned Sergeants responses to Plaintiff's grievance submission attempt, are a direct contravention to WCJ grievance policies.

50. In or around October 31, 2017 through November 12, 2017 Plaintiff attempted to file a grievance with respect to CCS'S failure to timely provide him with the essential medicat-ions required for his chronic pituitary gland disfunction/ imbalance. However, Sergeants Greenfox, and Middlton refused to accept said grievance. and stated "You just have to wait" (Greenfox) 2-k Housing unit; This is non-grievable (Middleton) 2-k Housing unit.

Plaintiff advised defendant Hewitt, that if her conduct persisted in the future, that he would file a grievance. Defendant Hewitt then stated to Plaintiff " My baby father's boys are here in the jail! I'm from Mount Vernon, if you don't know you better ask about jermaine, so file your grievance if you want and see what happens to your white ass." Plaintiff understood this to mean that he would be assaulted by other inmates if he filed a grievance against defendant Hewitt. Accordingly, Plaintiff did not grieve defendant Hewitt, out of fear of being assaulted by her childen's father counter-parts confined at the WCJ.

45. Plaintiff asserts that subsequent to defendant Hewitt's out loud reading of his Notice of Claim, he began to suffer, other adverse action i.e. the nurses performing his testosterone injections started to deliberately, perform the injection, at an extremely slow pace with the intentions of causing Plaintiff pain. Typically, an injection last 15 seconds, however Plaintiff's injections were lasting approximately 30 seconds.

46. In addition, the nurses who were performing Plaintiff's intramuscular injections were not asperating the needle upon piercing the skin before administering the medication to check for blood, causing dark purple blood to shoot out of Plaintiff's body from the injection wound.

51. As a direct and proximate result of defendants actions Plaintiff was damaged and seeks redress.

**INJURIES/DAMAGES**

a. Violation of Plaintiff's rights as secured by the First, Eighth, and Fourteenth Amendments to the U.S. Const.;

b. Violation of Plaintiff's rights as secured by State Law under Gross Negligence, Negligence, Respondeat Superior, Medical Malpractice, Intentional infliction of Emotional Distress, Mental Disturbance;

c. Pain & Suffering;

d. Mental anguish;

e. Numbness of hands and feet;

f. Light headedness, dizziness, headaches, risk of Central Nervous System Shock;

g. Constant fatigue & Depression feeling Loss of sex drive;

h. Brusing of the arms;

i. Libel;

j. Unwanted weight loss & Stretch marks;

k. First Amendment violation against Randazzo, Kitt, Carden, (access to the court).

## COUNT I CLAIMS OF MONELL AGAINST WESTCHESTER COUNTY, CORRECT CARE SOLUTIONS, LLC & NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES, P.C.

52. Plaintiff hereby references and incorporates all of the foregoing paragraphs and further alleges as follows:

53. Defendant's have hereby established a pattern of deliberate indifference at WCJ, based on the County's medical (out sourced) contractor CCS & NYCCSMSPC failure to timely prescribe inmates at WCJ essential life or death medications without a regard for validation or cost.

54. Westchester County, has been on notice of their medical contractors deliberate indifference for an extended period, yet fails to intervene and consciously turns the blind eye to the misconduct thereby ratifying it. Westchester County, has been named in over 60 law-suits in the Southern District of New York, along with CCS defendant's, based on claims of Deliberate Indifference to inmates serious medical needs.

55. Plaintiff request that the Honorable court use its database to identify lawsuits filed against CCS and Westchester County, based on denial or interferrence with medications, and

care; apply such to Plaintiff's claims to establish a pattern of deliberate indifference at WCJ, e.g. Dilworth V. Goldberg, 914 F.Supp 2d 433, (S.D.N.Y. 2012); Melvin V. Westchester County, NYSDC 032916; Bektic-Marrero V. Goldberg, 850 F.Supp 2d 418; Rodriguez V. County of Westchester, 01111 NYSDC (S.D.N.Y. 2015, 15Cv. 9626, Alvarado et al., V. Westchester County, 22 F.Supp 3d, 208, 217 (S.D.N.Y. 2014)

56. Moreover, Westchester County fails to properly train, and supervise its contractors as to constitutional requirements, and state law mandates. Further, Westchester County, fails to properly investigate claims of Medical Malpractice, Gross Negligence, or deliberate indifference at WCJ.

57. As a direct and proximate result of defendant's conduct Plaintiff was damaged and seeks redress.

**COUNT II 1983 CLAIMS OF CRUEL AND UNUSUAL PUNISHMENT AGAINST WESTCHESTER COUNTY, CORRECT CARE SOLUTIONS, LLC NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES P.C., KEVIN CHEVERKO, M.D. ULLOA M.D. GENDELL**

58. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

59. Defendant's here deprived Plaintiff of his medications for over 33 days, despite the serious side effects that Plaintiff faced i.e. death etc.

60. Moreover, defendant's forced Plaintiff to suffer from Multiple ailments as a result of not taking his prescribed medications, without offering or otherwise providing any pain relief for the ailments e.g. vomiting, numbness, headaches, therefore the aforementioned defendant's deliberately failed to

control pain inter alia.

61. Plaintiff asserts that he suffered in pain for approximately 34 days inter alia, and during every testosterone injection.

62. Plaintiff further asserts that as a result of not being provided with his prescribed medications, that defendant's exposed him to a potential tumor in his pituitary gland.

63. As a result of defendant's actions or omissions Plaintiff was damaged, and seeks redress.

**COUNT III 1983 CLAIMS OF RETALIATION AGAINST DEFENDANTS WESTCHESTER COUNTY, C.O. MILLER, AND HEWITT**

64. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

65. Defendant Hewitt here caused Plaintiff to be subjected to harassment, and retaliation by correctional officer Miller, and nurse's of CCS by way of reading Plaintiff's Notice of Claim out-loud before CCS staff, and C.O. Miller. Moreover, defendant Hewitt mistated that Plaintiff was receiving H.I.V. injections instead of Testosterone.

66. Plaintiff asserts that defendant Hewitt never reads anyone else's legal papers out-loud when performing notary. Defendant read Plaintiff's papers maliously, and with the intentions of causing conflict and/or retaliation for Plaintiff, in addition, defendant made threats of harm against Plaintiff by way of intimidating him with her child's father (incarcerated

at WCJ), and his comrades if Plaintiff filed a grievance against her.

67. Defendant's conduct caused Correctional Officer Miller to shout to Plaintiff "are you here for your H.I.V. shot" before other inmates and staff, every time he arrived for his Testosterone injection. As a result of defendant Miller's comments a vast majority of inmates and WCJ staff believe that Plaintiff has H.I.V. and treat him indifferent. People are afraid to shower after Plaintiff, use the microwave after him, use the phone after him, and inmates never pick him on a sports team or to play board games.

68. As a direct and proximate result of defendant's actions Plaintiff was damaged and seeks redress.

**COUN IV STATE LAW CLAIMS OF RESPONDEAT SUPERIOR AGAINST WESTCHESTER COUNTY, CORRECT CARE SOLUTIONS, LLC NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES P.C. KEVIN CHEVERKO**

69. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

70. Defendant's here failed to properly train, and supervise its subordinates with respect to federal & state law requirement, that regulate reasonable, and adequate medical care at WCJ

71. Defendant's here allowed its employee's to violate Plaintiff's rights by interferring with his medications for his serious medical needs inter alia; and

failing to control pain, inter alia.

72. Under the doctrine of Respondeat Superior defendant's are liable vicariously for the tortious act(s) committed by their employee's.

73. Accordingly, defendant's are liable to Plaintiff for their employee's omissions and/or misconduct.

74. As a direct and proximate result of defendant's actions Plaintiff was damaged and seeks redress.

**COUNT V CLAIMS OF STATE LAW MEDICAL MALPRACTICE AGAINST CORRECT CARE SOLUTIONS, LLC, NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES, P.C.**

**M.D. ULLOA, M.D. GENDELL**
**WESCHESTER COUNTY, KEVIN CHEVERKO**

75. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

76. Here defendant's owed Plaintiff the duty of proper medical care, defendant's breached this duty when they failed to timely provide him with his prescribed medications, and further failed to control pain. As a direct and proximate result of defendant's failure to provide him with his essential medications he suffered from the injuries stated supra. Defendant's deviated from the acceptable standard of medical practices.

77. Plaintiff avers that he has stated a prima facie case of medical malpractice against defendant's.

COUNT VI CLAIMS OF INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS AGAINST
WESTCHESTER COUNTY, NEW YORK CORRECT CARE SOLUTIONS, LLC
NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES P.C.,
KEVIN CHEVERKO, M.D. ULLOA, M.D. GENDELL

78. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

79. Defendant's conduct as described supra and infra shocks the conscious and violates all bounds of decency established a civilized society. Plaintiff asserts that defendant's conduct was intentional and reckless which subsequently caused Plaintiff severe distress; and a constellation of debilitating ailments. Defendant's act(s) were atrocious, outraegous, and intolerable.

80. As a direct and proximate result of defendant's actions Plaintiff was damaged/injured and seeks redress.

COUNT VII CLAIMS OF DELIBERATE INDIFFERENCE AGAINST
WESTCHESTER COUNTY, CORRECT CARE SOLUTIONS, LLC
KEVIN CHEVERKO, NEW YORK CORRECT CARE SOLUTIONS MEDICAL
SERVICES P.C. M.D. ULLOA, M.D. GENDELL

81. Plaintiff hereby incorporates and references all the foregoing paragraphs and further alleges as follows:

82. Defendant's conduct here was deliberate. Defendant's intentionally (through omission or recklessness), deprived Plaintiff of his prescribed medications for a lenghty period, unnecessarily, for a serious medical condition, that may have resulted in death.

83. Plaintiff asserts that his Pituitary Gland chronic condition, is significantly serious, and defendant's actions were malicious, and deliberate, and served no penological interest.

84. Defendant's conduct evidences a wantonly, reckless, willing, and malicious. Defendant's prior history of lawsuits illuminates defendant's failure to train and supervise its employee's despite their propensity to violate WCJ inmates civil rights.

85. Defendant Cheverko, with the authority vested in him failed to intervene, while on notice that constitutional violation were occurring at WCJ, but failed to take any corrective action. Plaintiff asserts that he has stated a <u>prima</u> <u>facie</u> case of deliberate indifference under various theories.

86. As a direct and proximate result of defendants actions

Plaintiff was damaged and seeks the following relief:

**RELIEF**

a. Declaratory Judgment that Plaintiff rights were violated under the First, Eighth and Fourteenth Amendments to the U.S. Const.;

b. Compensatory damages against all defendant's in the amount of $ 5,000,000.00; or as a jury may determine, but no less than $ 5,000,000.00;

c. Punitive damages against all defendant's in the amount of $10,000,000; or as a jury may determine, but no less than $10,000,000;

d. Nominal damages against all defendant's in the amount of $ 50,000.00; or as a jury may determine, but no less than $50,000

e. Special Damages against all defendant's in the amount of $40,000; or as a jury may determine, but no less than $40,000;

f. Presumbed damages;

g. Cost and disbursments;

h. That defendant's Cheverko, Gendell, and Ulloa are liable under § 1983 Supervisory Liability;

i. Court assistance with identifying and further causes of action.

**DECLARATION UNDER PENALTY OF PERJURY**

I Brian White, state that I am the Plaintiff in the above entitled action, and I have read the verified Complaint, and assert that the contents thereof are true and correct Pursuant to 28 U.S.C. § 1746, except for the matters that I allege to be on information and belief, and even those matters we believe them to be true. The foregoing Verified Complaint was executed on January 26th, 2018.

Dated: Valhalla, New York
January 26th, 2018

Brian White, 180957
P.O. BOX# 10
Valhalla, New York 10595
West. Co. Jail
Plaintiff.

Westchester gov.com

Department of Correction Valhalla, New York

# Memorandum

Date: December 24, 2017

To: Inmate Brian White – Jid# 180957, Bkg#17-4778

From: Sergeant Scott #167

Re: Grievance # J-17-0602

---

Based on the information provided by medical I find your complaint unsubstantiated and your grievance has been denied. I received written documentation from Michael Kelly, Director of Nursing which states that on 11/20/17, the on-site Medical Director, Dr. Ulloa spoke with your community physician regarding your plan of care. The community physician reported to Dr. Ulloa that he wanted to discontinue medication for you. Per Dr. Ulloa your plan of care here at the facility includes a referral to the endocrinologist and an appointment has been scheduled. Medication and specifically the dosage per Dr. Ulloa will be titrated (gradually decreased to completion) based on lab values. As far as the nursing staff administering intramuscular injections per Michael Kelly, each nurse is trained and has passed a national licensing examination. Included in their years of formal training is the proper technique for administering intramuscular injections along with be assessed for competency in various skills such as administering injections. Your complaint regarding the administering of your injection is vague. You do not provide any specific details about the injection; you only state that the nurse did not know how to administer an intramuscular shot.

Westchester gov.com

Department of Correction Valhalla, New York

# Memorandum

**Date:** **28 December 2017**

**To:** **WHITE, Brian**
**Detainee JID #180957**

**From:** **Francis Delgrosso**
**Assistant Warden**

Francis Delgrosso
Assistant Warden

**Re:** **Grievance #17-0602**

---

I have reviewed your appeal to the grievance referenced above and I agree with the decision of the grievance coordinator.

Our healthcare provider CCS is well aware of your condition and is diagnosing and have been treating you in accordance with standard medical practice. As for your personal opinion and allegations questioning the treatment and qualifications of their staff it is notated that each of their nurses are required to pass a national licensing examination and are routinely assessed for competency. CCS has also as you request in your remedy scheduled you for an appointment with an Endocrinologist.

Your grievance appeal is denied.

BRIAN WHITE
JID 180957
P.O. BOX# 10
VALHALLA, NEW YORK 10595

UNITED STATES POSTAGE
PITNEY B
02 1P $ 006.
0002712896 JAN 22
MAILED FROM ZIP CODE 1

TO: UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Attn: Pro Se clerk

500 Pearl Street
New York, New York 10007

RECEIVED
DOCKET UNIT
2018 JAN 24 PM 4:23

Legal Mail

USM PS
SDNY